**Electronically Filed
Supreme Court
SCWC-18-0000636
27-MAY-2021
08:16 AM
Dkt. 15 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

MANUEL SANDOVAL, Petitioner/Defendant-Appellant.

SCWC-18-0000636

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000636, CAAP-18-0000637, and CAAP-18-0000638;
CASE NOS. 1PC141001782, 1PC151001156, and 1PC161000563)

MAY 27, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ., AND
CIRCUIT JUDGE AYABE, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

Manuel Sandoval is the defendant in three separate criminal cases related to repeated violations of an injunction against harassment. The injunction was put in place against Sandoval by Complaining Witness 1 (CW1), a woman with whom

Sandoval used to work.  Sandoval pleaded no contest in two cases to a total of eleven counts of violating an injunction against harassment; in both cases, he was sentenced to probation.

Two years later, he was convicted after a bench trial of one count of violating an injunction against harassment, and one count of second-degree assault of Complaining Witness 2 (CW2).  At sentencing, the Circuit Court of the First Circuit (circuit court) revoked Sandoval's probation in the two prior cases based on Sandoval's stipulation that he had violated the terms of his probation.  Following the revocation of his probation, the court sentenced Sandoval to consecutive one-year terms for each of the twelve total counts of violating the injunction against harassment and five years for the assault conviction, for a total of seventeen years of imprisonment.  The Intermediate Court of Appeals (ICA) affirmed, and we granted Sandoval's application for a writ of certiorari.

We conclude that before accepting a defendant's stipulation to a probation violation, the trial court must ensure that the defendant knowingly, intelligently, and voluntarily enters into the stipulation.  A stipulation to a violation of the terms of one's probation can have significant consequences, including - as was the case here - the potential for extended incarceration.  The record does not reflect that Sandoval understood the consequences of stipulating to the

State's motions to revoke probation, and accordingly, the stipulation should be vacated. Moreover, at Sandoval's resentencing hearing, the circuit court did not sufficiently justify the imposition of consecutive sentences for each count while considering the factors in Hawai'i Revised Statutes (HRS) § 706-606 (2014). Thus, we vacate Sandoval's sentence and remand for further proceedings related to Sandoval's probation revocation and resentencing.

## II. BACKGROUND

### A. Circuit Court Proceedings

#### 1. Change of Plea Hearing, 1PC-14-1-001782 (Case 1)

On May 18, 2015, the circuit court[1] held a change of plea hearing in Case 1 at which Sandoval pleaded no contest to nine counts of violating an injunction against harassment of CW1 pursuant to HRS § 604-10.5(i) (2016),[2] and the State agreed to nolle prosequi the remaining four counts.

After a colloquy, the court found that Sandoval "knowingly, voluntarily, and intelligently entered his plea with an understanding of the nature of the charges against him,"

---

[1]     The Honorable Christine E. Kuriyama presided over proceedings in all three cases.

[2]     HRS § 604-10.5(i) states, "A knowing or intentional violation of a restraining order or injunction issued pursuant to this section is a misdemeanor[.]"

3

accepted the change of plea, and adjudged Sandoval guilty as charged as to all nine counts.

The State and Sandoval's counsel agreed on a recommended sentence: 180-day jail term with credit for time served, one year of probation, a "stay-away order" from CW1 and the restaurant where she worked (which Sandoval's mother owned), and mental health assessment and treatment.  The court imposed this sentence on each count as "a concurrent sentence meaning everything . . . will run together."

## 2.   Change of Plea Hearing, 1PC-15-1-001156 (Case 2)

On March 21, 2016, the court heard Sandoval's change of plea in Case 2, for two counts of violating the injunction against harassment of CW1.  The court again accepted Sandoval's plea of no contest after a colloquy.

Noting that Sandoval had seventeen prior convictions for violating a restraining order or injunction against harassment - plus the two counts to which he pleaded that day - the State requested one year of probation and mental health assessment and treatment.  Sandoval agreed and also requested credit for time served.  The court followed the recommendations and imposed one year of probation with 100 days imprisonment on both counts (the amount of time he had already been incarcerated), to run concurrently.

4

### 3.    Trial, 1PC-16-1-0563 (Case 3)

In March 2018, Sandoval was tried on one count of second-degree assault of CW2 in violation of HRS § 707-711 (2014 & Supp. 2018)[3] and one count of violating an injunction against harassment of CW1.  The bench trial stemmed from the events of April 8, 2016, where Sandoval twice visited the restaurant where CW1 worked, once around 8:00 p.m. and again around 10:00 p.m.  Both visits culminated in physical altercations, and Sandoval was charged with violating the injunction against harassment of CW1 for the 8:00 p.m. incident and with second-degree assault of CW2 for the 10:00 p.m. incident.  Conflicting versions of the events of the day emerged at trial.  In Sandoval's version of the 8:00 p.m. incident, RR, CW1's coworker, along with CW2, attacked Sandoval.  When Sandoval returned at 10:00 p.m. to gather belongings he had left at the scene, CW2 approached

---

[3]    HRS § 707-711 (2014 & Supp. 2018) states in relevant part:

(1) A person commits the offense of assault in the second degree if:

(a) The person intentionally, knowingly, or recklessly causes substantial bodily injury to another;

(b) The person recklessly causes serious bodily injury to another;

. . .

(d) The person intentionally or knowingly causes bodily injury to another with a dangerous instrument[.]

5

Sandoval, and Sandoval defended himself with his fists, thinking CW2 intended to attack him again. Sandoval acknowledged that he "str[uck] [CW2] first" during the 10:00 p.m. incident. But according to several witnesses, CW2 did not hit Sandoval during the 8:00 p.m. incident, and Sandoval attacked CW2 with a knife when Sandoval returned to the scene at 10:00 p.m. The State introduced photos of two cuts on CW2's face: one on his left cheek and one on the right side of his face in the space between his nose and mouth. CW2 went to Wahiawā General Hospital, where he got stitches.

The circuit court found Sandoval guilty on both counts.

### 4. Motions for Revocation of Probation and Resentencing, Cases 1 and 2, and Sentencing, Case 3

The State moved to revoke Sandoval's probation on various grounds in Cases 1 and 2. At the hearing on the State's motion, Sandoval's counsel began by stating that Sandoval would stipulate that the convictions in Case 3 violated the terms and conditions of his probation. The parties and the court had the following exchange:

> [DEFENSE COUNSEL]: Judge, I've had a chance to speak to Mr. Sandoval about the two motions for revocation of probation. At this point in time, although he knows he has the right to have a contested hearing to have [his probation officer] come in and testify to the Court about violations, he would not be doing that. And he would be stipulating that the convictions here violated the terms and conditions of his probation.

6

THE COURT: Thank you.

[THE STATE]: You need to get that from the defendant directly.

THE COURT: Mr. Sandoval; is that correct?

THE DEFENDANT: Yes, Your Honor.  At the times of probation I did check in, but I'm not going to deny that I did not pick up a new charge, or I'm not saying –

THE COURT: There are other reasons as to why the motions were filed.

THE DEFENDANT: Oh and I did have it appointed, I just – 'cause I got rearrested, I was not able to make an appointment.  So I did not –

[DEFENSE COUNSEL]: For the substance abuse assessment.

THE DEFENDANT: - I wasn't able to comply.

THE COURT: [Defense counsel], would you like to take a few minutes and go over -

[THE STATE]: Actually, I think to make it easier I would orally supplement both motions to indicate that he has been convicted of a felony which requires the Court to revoke the probation if he will stipulate that he did receive the terms and conditions that were included in each motion, and he is the same person and he understood everything.

The circuit court recessed so that Sandoval could review this information with his counsel.  After the recess, the following exchange occurred:

THE COURT: Is he still stipulating to both motions?

[DEFENSE COUNSEL]: Yes, Judge, with an explanation, if you would bear with us.

THE COURT: Alright.

THE DEFENDANT: Yeah.  My explanation, I was out for three weeks, Your Honor.  And I did see my probation officer. And I did get a full-time job . . . even though some of supervise[d] release the prosecutor said that, oh, they couldn't confirm that[.]

[DEFENSE COUNSEL]: But – but, Judge, Mr. Sandoval, even though he was working, he did not provide the information to his probation officer 'cause he was arrested shortly thereafter.

7

. . . .

[DEFENSE COUNSEL]: And, of course, we're also agreeing that he did get arrested for violating the restraining order.

. . . .

THE COURT: Mr. Sandoval, the motions then will be granted and you will be resentenced in those two misdemeanor cases; do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: In addition to the felony case today.

During the sentencing portion of the hearing, the State first discussed whether probation would be appropriate, addressing every factor listed in HRS § 706-621 (2014),[4] the

---

[4] HRS § 706-621 states:

The court, in determining whether to impose a term of probation, shall consider:

(1) The factors set forth in section 706-606 to the extent that they are applicable;

(2) The following factors, to be accorded weight in favor of withholding a sentence of imprisonment:

　　(a) The defendant's criminal conduct neither caused nor threatened serious harm;

　　(b) The defendant acted under a strong provocation;

　　(c) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

　　(d) The victim of the defendant's criminal conduct induced or facilitated its commission;

　　(e) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;

(continued . . .)

statute governing probation. Since the circuit court subsequently adopted the State's analysis, we quote it at length here:

> 2-A. The defendant's criminal conduct neither caused nor threatened serious harm. The Court has found that it did cause a substantial bodily injury. Also, with this being the nineteenth conviction for either violation of TRO or injunction against harassment taken out by the same petitioner, [CW1]. Although each violation may not seem like so much, it most certainly adds up, especially to the mental well-being of the petitioner. That factor goes against the defendant.
>
> B. The defendant acted under a strong provocation. Though he testified to that effect, the Court found the other witnesses to be credible and, thus, consistently would not find that his claims of provocation are true. That factor goes against the defendant.
>
> [C.] There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense. Same thing again. He was in the midst of a fight. He tried to claim that a ring of his cut the cheek of [CW2]. The Court did not find that credible. And there's really nothing else that would otherwise constitute an excuse not enough to be a defense.
>
> [D.] The victim of defendant's conduct induce[d] or facilitate[d] its commission. It goes against the defendant again. The defendant has no history of prior delinquency. I mentioned [nineteenth] conviction for violation of injunction against harassment.

---

> (f) The defendant's criminal conduct was the result of circumstances unlikely to recur;
>
> (g) The character and attitudes of the defendant indicate that the defendant is unlikely to commit another crime;
>
> (h) The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program or both;
>
> (i) The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents; and
>
> (j) The expedited sentencing program set forth in section 706-606.3, if the defendant has qualified for that sentencing program.

[E.] Although we do acknowledge that this is his first felony, which is something to consider. Usually, given the history and when this came up, this is also clearly an escalation, which I will be getting into further.

2-F. Defendant's criminal conduct was the result of circumstances unlikely to reoccur. Briefly on this point. The Court has heard the defendant's testimony in court. Has had him appear multiple times. But I will focus on his testimony and his statement in the [presentence report (PSR)].

He is fixated on [CW1]. And what was long ago recognized to be a[n] unhealthy way, he maintains that fixation. He went up on the stand and made several claims that [CW1] tells him that she loves him. And the State had to bring her back on and other people he said come up to him and tell him that [CW1] loves him. And they all had to make it clear that, no, I never said that sort of thing.

But this is not a fixation that rises to the level of 704, lack of penal responsibility. That was something that was considered. The defendant, having been found fit, decided to withdraw[] consideration of that. But it is this fixation which shows that this is just going to continue. And I will get back to the e[s]calation that's occurred while it's continued at least [nineteen] times that he's been convicted for.

[G.] The character and attitude of the defendant indicate that the defendant is unlikely to commit another crime. Nineteenth conviction on the violation of the injunction against harassment. And it will be counting if he's released.

[H.] The defendant's particularly likely to respond affirmatively to program of restitution or probationary program or both. And this is probably one of the most important parts for criteria for probation.

This defendant is now - has just been revoked on [twelve] of the prior [eighteen] counts. The other ones lapsed, I guess, at this point. But he has been consistently violating a court order which simply tells him to remain away from [CW1], have no contact with her, and not go to her business, which everyone knows is his family's restaurant. He knows not to go there. Even in his testimony he proffers no basis for why he should be in there.

Since he can't follow [the] simpl[e]st of court orders, an affirmative court order against him, there's no basis to find that probationary terms will work. This is in addition to the PSR - well, I'm just covering over lightly the PSR goes into some detail of correction on his prior probations. They haven't worked. And it's not for lack of services, it's not for lack of the court, it is lack of the

defendant's willingness to follow court orders. And that does not look like it's going to change.

I. The imprisonment of the defendant would be - would entail excessive hardship to the defendant or the defendant's dependents. There's no dependents involved here. Jail is a hardship. It's meant to be a hardship. That's part of the point. There's nothing to indicate that this would be excessively a hardship. And it's going to have to be weighed to the factors in 706-606, which I'll be getting to momentarily.

J. The expedited sentencing program set forth in 706-606.3 if the defendant is qualified, which he hasn't. Basically, every factor goes against probation.

The State next addressed each of the factors to be considered in imposing a sentence, set forth in HRS § 706-606:[5]

I wanted to set [the probation statute] aside first because then we go to 706-606. And we most certainly can cross out 2-D, to provide the defendant with needed education or vocational training, or, I'm sorry, medical care or other

---

[5]   HRS § 706-606 provides:

The court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

    (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

    (b) To afford adequate deterrence to criminal conduct;

    (c) To protect the public from further crimes of the defendant; and

    (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

11

> correctional treatment in the most effective manner. He's
> not amenable to probation. He's not amenable to these
> treatments. To the degree that he is, they are separate
> and apart from him following simple court orders and
> respecting the wishes of [CW1], let alone not physically
> hurting members of his own family [CW2], granted by
> marriage, not by blood.
>
> The nature and circumstances of the offense and the history
> of the characteristics of the defendant, I will get to
> that.
>
> The need for the sentence imposed. 2-A, to reflect the
> seriousness of the offense. To promote respect for law and
> provide for just punishment of the offense [B]. And, C, to
> protect the public from further crimes of the defendant.
>
> And the State does point out that in this case public
> includes just any member of the public. [CW1] should not
> have to [] continually suffer the intentions of this
> defendant simply because she is one person, one member of
> the public.
>
> C is highly applicable here. I still want to touch on A
> and C, but I want to touch very briefly on B, to afford
> adequate deterrence to the defendant's criminal conduct.
> Nothing is going to do that. Absolutely nothing is going
> to do that at this point, Your Honor[.]
>
> It might be curbed for a time. Particularly the level of
> violence that might be used at any particular point, but
> not enough. And of all the defendants I've had, this is
> the defendant that I'm worried is going to kill someone.
> He may not mean to going in, I acknowledge that. He may
> try to be a good person, I acknowledg[e] that. But this is
> where I'm getting to with the escalation.

The State further argued that the Court should impose consecutive sentences based on the same factors, stating:

> But [if] the Court does not make these consecutive. The
> defendant already having served about two years of the
> five. Three years he's out and then what? I would much
> rather have a rehabilitative program, but I don't know of
> anything given the history at this point. If it comes up,
> even if this is consecutive terms, again, the parole board
> can consider that.

In response, Sandoval's counsel stated that the Hawai'i Paroling Authority does not deal with misdemeanor cases; thus, the suggestion that Sandoval would be released on parole even if

12

the court imposed a long sentence was incorrect.  Counsel asked for probation.

When Sandoval himself had a chance to speak, he stated that some of the injunction violations arose from his family getting CW1 to report falsely that he had committed a violation. He told the court that he "would never hurt [CW1], never, because [he] love[d] her with all of [his] heart."  He also stated that CW1 lied when she testified at trial - although she said that Sandoval was merely a coworker, on cross-examination she admitted that they sometimes ate ice cream together. Further, Sandoval asserted that they also went on breakfast and lunch dates.  Sandoval continued at length, pointing out inconsistencies in the State's case, describing his relationship with CW1, CW2, and family members, and asserting that many people involved in the case (including CW1) were lying about his conduct.  He stated, however, that he continued to believe that CW1 loved him and was his girlfriend.

After Sandoval finished his statement, the court stated:

> I've looked at the sentencing factors set forth in Section 706-606 of the Hawai'i Revised Statutes and the factors to be considered in imposing a term of probation under Section 706-621.  [The State] discussed each of these factors and I agree with his assessment.
>
> I believe that the factors to be considered in imposing a term of probation in each of these cases, they all weigh against you for the reasons stated, for the reasons which are reflected in the record.  The factors to be considered in imposing a sentence.  I'm very concerned about the

13

manner in which you are thinking, the manner in which you are expressing yourself. . . . And I agree with [the State]'s assessment as to the factors in 706-606.

The court further stated, "It concerns me greatly that you're saying, I want to get out and get my girl back. Which indicates to the Court that if you are released from custody you're going to be violating the restraining order [CW1] may have in place at this time." After further statements from Sandoval, the court then said:

> Mr. Sandoval, I am concerned about the Assault 2 incident. I'm very concerned about the TRO violations. And I'm very concerned about [CW1]'s safety and well-being. There are a number of factors which I feel weigh against you in terms of placing you on probation. Among them are that you have significant mental health issues that you are denying. The records indicate at times that you had a serious substance abuse issue. You still believe that [CW1] is your girlfriend and loves you. And you believe that your family and others are conspiring against you.

After Sandoval made further statements and a brief recess, the court continued, at times with interjection from Sandoval:

> You appear to lack insight into the personal issues you're facing in your life and that you are dealing with. You blame others for your circumstances and not yourself. Your behavior reflects that you have acted violently and aggressively in the past. And that you at times have posed a danger to others.
>
> . . . .
>
> The record also reflects, as the State has pointed out, that your conduct, your behavior has been escalating. You have all of these TRO violation charges. You have the Assault [2] felony charge now.

The Court, "looking at everything, [and] taking into consideration the totality of the circumstances," sentenced

Sandoval to five years for the second-degree assault conviction and one year for each of the twelve TRO violations, to be served consecutively (seventeen years total) with credit for time served.

**B.    ICA Proceedings**

**1.    Sandoval's Points of Error**

Sandoval raised five points of error in the ICA, rephrased for clarity as follows: (1) whether the circuit court erred when it concluded that Sandoval's no-contest pleas in Cases 1 and 2 were entered into voluntarily, intelligently, and knowingly; (2) whether the circuit court abused its discretion when it imposed consecutive sentences because it failed to advise Sandoval of the potential for consecutive sentences when it accepted Sandoval's stipulation to revoke probation; (3) whether the circuit court erred by failing to state the specific factors it considered when imposing consecutive sentences; (4) whether the circuit court erred by relying on Sandoval's refusal to admit guilt when imposing consecutive sentences; and (5) whether there was substantial evidence to support Sandoval's conviction of second-degree assault in Case 3.

As to his first point of error, Sandoval specifically challenged four aspects of his no-contest plea: (1) "the trial court failed to advise [him] of the maximum penalty provided by law for the adjudicated offenses"; (2) "the trial court failed

to advise [him] of the impact a consecutive sentence would have"; (3) "the trial court failed to advise [him] that he had the right to a jury trial," and (4) "the trial court failed to inquire whether [his] 'willingness to plead guilty was a result from a plea agreement as required by [Hawai'i Rules of Penal Procedure (HRPP)] Rule 11(d).'"[6]  (Quoting State v. Solomon, 107

---

[6]     HRPP Rule 11 provides in relevant part:

**(b) No contest.**  A defendant may plead no contest only with the consent of the court.  Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

**(c) Advice to defendant.**  The court shall not accept a plea of guilty or no contest without first addressing the defendant personally in open court and determining that the defendant understands the following:

> (1) the nature of the charge to which the plea is offered; and
>
> (2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and
>
> (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made; and
>
> (4) that if the defendant pleads guilty or no contest there will not be a further trial of any kind, so that by pleading guilty or no contest the right to a trial is waived.

**(d) Advisement concerning alien status.**  Prior to entry of a plea of guilty or no contest, or admission of guilt of sufficient facts to any offense punishable as a crime under state law, except those offenses designated as infractions, the court shall read the advisement in [§ 802E-2], Hawai'i Revised Statutes, on the record to the defendant.

(continued . . .)

Hawai'i 117, 127, 111 P.3d 12, 22 (2005)).

### 2. The ICA's Memorandum Opinion

The ICA held that it lacked jurisdiction to consider Sandoval's challenge to the voluntariness of his no-contest pleas because he only appealed from the circuit court's post-judgment orders of resentencing. Because Sandoval did not appeal the underlying judgments of conviction in Cases 1 and 2, and the underlying judgments were not "preliminary rulings upon which the [post-judgment resentencing orders were] predicated," the ICA said it could not review those underlying judgments for the voluntariness of Sandoval's no-contest pleas. (Quoting Cook v. Surety Life Ins. Co., 79 Hawai'i 403, 409, 903 P.2d 708, 714 (App. 1995)).

The ICA further rejected Sandoval's contention that the circuit court should have advised him of the maximum penalty he could face by stipulating to the motions to revoke probation. Noting that Sandoval waived this point of error by failing to make a supporting argument, the ICA also rejected the contention on its merits. The ICA quoted HRS § 706-625(5) (2014), which

---

**(e) [E]nsuring that the plea is voluntary.** The court shall not accept a plea of guilty or no contest without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or no contest results from any plea agreement.

states, "When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which the defendant was convicted." Based on this language, the ICA concluded that there was no legal basis for the argument that the circuit court was required to notify him of the consequence of probation revocation before he stipulated to the motions to revoke probation. Additionally, the ICA pointed out that "the record reveals that when Sandoval stipulated to the motions to revoke probation, he had notice that consecutive sentences could be imposed" based on his signatures on the no-contest plea form and the form stating the terms and conditions of his probation, and his attorney's statements at the change of plea hearing.

Third, the ICA addressed Sandoval's contention that the circuit court improperly imposed consecutive sentences. The circuit court had discretion to order that Sandoval serve consecutive terms of imprisonment, and was required to consider the factors set forth in HRS § 706-606.[7] HRS § 706-668.5 (Supp. 2015) (giving sentencing courts discretion to impose consecutive sentences after considering the § 706-606 factors). The ICA identified the portions of the record in which the circuit court considered the statutory sentencing factors and stated reasons

---

[7]     For the text of HRS § 706-606, see supra, note 5.

18

for the sentence that related to those factors.  For example,

> [t]he [c]ircuit [c]ourt also identified several concerns
> that related to the sentencing factors, including that
> Sandoval had repeatedly failed to comply with the terms of
> his probation (HRS § 706-606(2)(a)-(d)); showed escalating
> behavior (HRS § 706-606(1) and (2)(c)); made statements
> suggesting he would continue violating the [i]njunction
> (HRS § 706-606(1) and (2)(a)-(d)); and lacked insight into
> personal issues, blamed others for his circumstances, and
> posed a danger to others (HRS § 706-606(1) and (2)(c)).

The ICA further concluded that the circuit court satisfied the requirement set forth in State v. Hussein, 122 Hawai'i 495, 509-10, 229 P.3d 313, 327-28 (2010), that a sentencing court state its reasons for imposing consecutive sentences.  In the ICA's view, the circuit court "identified the specific facts or circumstances within the range of statutory factors that the court considered," and stated that it was imposing consecutive sentences based on the totality of the circumstances identified.

The ICA also rejected Sandoval's contention that the circuit court at sentencing improperly relied upon his refusal to admit guilt.  In reviewing the transcript of the sentencing hearing, the ICA could not identify any statements of the circuit court that supported Sandoval's assertion.

Finally, the ICA disagreed with Sandoval's argument that there was insufficient evidence to support his conviction for second-degree assault.  As the ICA noted, at the time Sandoval was charged, the statute defined the offense as, in

19

relevant part, "intentionally or knowingly caus[ing] substantial bodily injury to another," "recklessly caus[ing] serious or substantial bodily injury to another," or "intentionally or knowingly caus[ing] bodily injury to another with a dangerous instrument[.]"  The ICA concluded that, taking the evidence in the light most favorable to the State, there was substantial evidence to support Sandoval's conviction.

In his application for writ of certiorari, Sandoval presents the same points of error he presented to the ICA.

### III. STANDARDS OF REVIEW

**A.    Acceptance of No-Contest Plea**

> The trial court is vested with wide discretion to accept or refuse a nolo contendere plea, and the acceptance or refusal of a no contest plea is therefore reviewed for abuse of that discretion. . . .  An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Merino, 81 Hawai'i 198, 211, 915 P.2d 672, 685 (1996) (quotation marks, citations, brackets, and footnote omitted).

**B.    Sentencing**

> A sentencing judge generally has broad discretion in imposing a sentence.  The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision.
> Factors which indicate a plain and manifest abuse of discretion are arbitrary and capricious action by the judge and a rigid refusal to consider the defendant's contentions.  And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Rivera, 106 Hawai'i 146, 154-55, 102 P.3d 1044, 1052-53

(2004) (block quotation format altered) (quotation marks, brackets, and citations omitted) (overruled on other grounds by Flubacher v. State, 142 Hawai'i 109, 414 P.3d 161 (2018)).

> In order to facilitate appellate review for abuse of a trial court's sentencing discretion, and whenever a defendant is qualified for sentencing alternatives and the sentence imposed is unsatisfactory to the defendant, we strongly encourage and recommend that . . . the sentencing court . . . state its reasons for imposing the particular sentence.

State v. Gaylord, 78 Hawai'i 127, 144, 890 P.2d 1167, 1184 (1995) (quotation marks, brackets, and citations omitted).

In addition, "[t]he weight to be given the factors set forth in HRS § 706-606 in imposing [a] sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." State v. Akana, 10 Haw. App. 381, 386, 876 P.2d 1331, 1334 (1994).

**C.    Substantial Evidence**

> Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (quotation marks and brackets omitted) (quoting State v. Pone, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)).

"Further, in reviewing whether substantial evidence exists to support a conviction, due deference must be given to the right of the trier of fact to determine credibility, weigh

the evidence, and draw justifiable inferences of fact from the evidence adduced." State v. Taliferro, 77 Hawai'i 196, 201, 881 P.2d 1264, 1269 (App. 1994) (citing State v. Naeole, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980)).

## D. Acceptance of a Stipulation

The validity of a defendant's waiver of their due process rights "presents a question of state and federal constitutional law. We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." State v. Gomez-Lobato, 130 Hawai'i 465, 468-69, 312 P.3d 897, 900-01 (2013) (quotation marks and ellipses omitted) (quoting State v. Friedman, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000)).

## IV. DISCUSSION

## A. The ICA Properly Rejected Sandoval's Challenge to His No-Contest Pleas in Cases 1 and 2

Sandoval failed to timely challenge the judgments of conviction in Cases 1 and 2. We therefore do not have jurisdiction to review the voluntariness of Sandoval's no-contest pleas. Pursuant to HRS § 641-11 (2016) and Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b)(1), a defendant in a criminal case has 30 days to appeal a judgment of the circuit court. An untimely appeal generally deprives the reviewing

22

court of jurisdiction to consider it.[8]  Cabral v. State, 127 Hawai'i 175, 184, 277 P.3d 269, 278 (2012).

Additionally, Sandoval's timely appeal of his resentencing orders does not confer jurisdiction upon the reviewing court to examine his underlying conviction.  This comports with the approaches taken by the federal courts.  See, Ee.g., United States v. Cate, 971 F.3d 1054, 1057-58 (9th Cir. 2020) (concluding that a supervised release hearing was not the proper proceeding for a defendant to challenge his underlying federal conviction); United States v. Wallace, 335 F.3d 76, 78 (2d Cir. 2003) (holding that a defendant could not, at a supervised release revocation proceeding, collaterally attack the conviction or sentence which resulted in his supervised release); United States v. Torres-Flores, 624 F.2d 776, 780 (7th Cir. 1980) ("However meritorious this defendant's . . . claim may be, an appeal from a probation revocation is not the proper avenue for a collateral attack on the underlying conviction."); United States v. Francischine, 512 F.2d 827, 828-29 (5th Cir. 1975) (holding that the underlying validity of a conviction

---

[8]  One exception is when "defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance."  State v. Knight, 80 Hawai'i 318, 323, 909 P.2d 1133, 1138 (1996) (quoting Grattafiori v. State, 79 Hawai'i 10, 13-14, 897 P.2d 937, 940-41 (1995)).  Since Sandoval does not allege ineffective assistance of counsel prevented him from challenging his no-contest pleas in Cases 1 and 2, that exception is not applicable here.

cannot be asserted as a defense in a probation revocation proceeding).

This is also consistent with the approach we have taken in civil cases: "[W]hen an order is properly certified pursuant to [Hawai'i Rules of Civil Procedure (HRCP)] Rule 54(b), the certification necessarily renders every preliminary ruling upon which it was predicated final and appealable as well." Weinberg v. Mauch, 78 Hawai'i 40, 46, 890 P.2d 277, 283 (1995) (quotation marks and citation omitted).  The Weinberg language implies that prior rulings leading up to an appealable order are only reviewable where the appealed order is predicated on those prior rulings.  The ICA adopted this interpretation in Cook v. Surety Life Insurance Co., 79 Hawai'i 403, 903 P.2d 708 (App. 1995), when it considered whether it could review orders granting summary judgment in addition to the Rule 54(b)-certified order enforcing a settlement agreement, stating:

> [W]e agree with [Appellee's] assertion that this court has no jurisdiction to consider Appellants' appeal of the orders granting summary judgment in favor of Appellees. Irrespective of whether the Order was a collateral order or an order certified pursuant to HRCP Rule 54(b), this court will only consider other orders which were preliminary rulings upon which the subject Order was predicated or were part of the series of orders which collectively led to that Order.  Weinberg, 78 Hawai'i at 46, 890 P.2d at 283 (on Rule 54(b) certified order)[;] [s]ee Security Pac. Mortgage Corp. v. Miller, 71 Haw. 65, 71, 783 P.2d 855, 858 (1989) (review is limited to parameters of orders appealed from).  The summary judgment orders concern the merits of the case, and the settlement order in issue has no bearing on the merits.  While the outcome of the summary judgment motions may have affected the parties' supposed willingness to negotiate as a practical matter, the summary judgment orders were not a prerequisite necessary to the Order.

Id. at 409, 903 P.2d at 714.

Thus, after an order revoking probation and resentencing, a defendant may appeal that order to challenge the revocation or the imposition of the new sentence. See, e.g., State v. Delima, 78 Hawai'i 343, 346, 893 P.2d 194, 197 (1995) (reviewing the defendant's sentence imposed upon resentencing from revocation of probation). But the merits of a person's original conviction cannot be challenged on appeal from a subsequent probation revocation or resentencing. For that reason, the ICA was correct to determine that it lacked jurisdiction to consider the voluntariness of Sandoval's no-contest pleas in Cases 1 and 2. If Sandoval wishes to challenge these convictions, the proper vehicle is a HRPP Rule 40 petition.

B.    **Due Process Requires that a Defendant Knowingly, Voluntarily, and Intelligently Stipulate to a Probation Violation**

Sandoval argues that he was not properly informed of the consequences of stipulating to the State's motion to revoke probation. Specifically, he argues that he was unaware of the possibility that such a stipulation could result in him being resentenced to consecutive sentences in Cases 1 and 2. We agree.

The rights a defendant gives up when stipulating to a

probation violation – particularly the right to have the State prove the probation violation – are similar in kind to those that accompany a guilty plea. The consequences are alike, too: revocation of probation may result, as it did here, in incarceration. In part for these reasons, the United States Supreme Court has held that due process protections apply when a defendant stipulates to revoke parole. See Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973) ("Even though the revocation of parole is not a part of the criminal prosecution, . . . the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process").

Indeed, many jurisdictions recognize that a probationer's due process rights includes the requirement that entering into a stipulation of a probation violation be done knowingly, voluntarily, and intelligently. For instance, the Georgia Supreme Court has held that a reviewing court may vacate a probation revocation when "there is independent evidence in the record suggesting that admission of probation violations was not knowing and voluntary." Meadows v. Settles, 561 S.E.2d 105, 108-09 (Ga. 2002) (quotation marks and ellipses omitted) (citing United States v. Pelensky, 129 F.3d 63, 68 (2d Cir. 1997)). Likewise, the Court of Appeals of Massachusetts held that "a defendant's agreement to waive a probation revocation hearing – such as by stipulating to violations – must be knowing and

26

voluntary and that such waiver can be assessed under the totality of the circumstances[.]"  Commonwealth v. Sayyid, 17 N.E.3d 469, 470 (Mass. App. Ct. 2014); see also State v. Lavoy, 614 A.2d 1077, 1079 (N.J. Sup. Ct. App. Div. 1992) ("The requirement that the court personally address the defendant before accepting a guilty plea [to a probation violation] is designed to assure that the defendant understand the charges, that a factual basis for the plea exists and that the plea is voluntary."); Hersch v. State, 562 A.2d 1254, 1256-57 (Md. 1989) (recognizing that "[a] probation revocation proceeding can, and often does, result in immediate deprivation of liberty," and that "certain fundamental rights [ ] can be waived only where the record affirmatively discloses a voluntary, knowing, and intelligent relinquishment of the right by the defendant himself."); Commonwealth v. Bell, 410 A.3d 843, 844 (Pa. Super. Ct. 1979) (requiring that some on-the-record showing be made to determine whether a probationer's waiver of a hearing is voluntary); People v. Hardin, 245 N.W.2d 566, 568 (Mich. Ct. App. 1976) (recognizing that "in order to insure that a defendant's admission of [a] probation violation is 'knowing and voluntary' prior to the court's acceptance of the plea, it is necessary that the defendant be at least advised of his due process rights to a hearing"); In re Jankowski, 157 A.3d 573, 581 (Vt. 2016) ("Whether or not an on-the-record colloquy is

27

required [before accepting a defendant's stipulation to waive a hearing on probation revocation], the totality of the circumstances must nonetheless demonstrate that the waiver was knowing and voluntary[.]").

Stipulating to revocation is both an admission of culpability for the violation and, in effect, a waiver of the defendant's right to constitutionally protected procedures. Thus, many jurisdictions agree that the record must demonstrate that a stipulation to revoke probation is made knowingly, voluntarily, and intelligently. And indeed, such a requirement is consistent with our law protecting several critical choices a defendant may make over the course of a criminal proceeding to ensure no defendant is wrongly denied the rights the constitution guarantees. See State v. Casey, 51 Haw. 99, 100, 451 P.2d 806, 808 (1969) (waiver of right of confrontation); State v. Dickson, 4 Haw. App. 614, 619, 673 P.2d 1036, 1041 (1983) (waiver of right to counsel); State v. Ibuos, 75 Hawai'i 118, 121, 857 P.2d 576, 578 (1993) (waiver of right to trial by jury); Wong v. Among, 52 Haw. 420, 425, 477 P.2d 630, 634 (1970) (guilty plea); State v. Hernandez, 143 Hawai'i 501, 515, 431 P.3d 1274, 1288 (2018) (no contest plea). For these reasons, we hold that before accepting a stipulation to revoke probation and resentence a defendant, courts must consider whether the

defendant knowingly, voluntarily and intelligently entered into the agreement.

Although jurisdictions agree that the record must demonstrate a stipulation to revoke probation was made knowingly, voluntarily, and intelligently, only a few jurisdictions require that the trial court engage in a colloquy with the defendant to ensure that a defendant's rights are adequately protected.  See, e.g., Lavoy, 614 A.2d at 1081 (recognizing that a colloquy between the court and the defendant is necessary "to obtain a factual basis for the plea [to a probation violation] and to establish that the defendant is pleading voluntarily and knowingly"); Hersch, 562 A.2d at 1258 (recognizing that an on-the-record colloquy "goes a long way toward ensuring essential fairness in an important proceeding while imposing only a small additional burden upon the trial judge").  A majority of courts, including the federal courts, have rejected requiring a colloquy.  Settles, 561 S.E.2d at 107 ("[T]he Federal courts that have addressed the issue have concluded that 'due process of law does not require a court to elicit a formal waiver from a defendant who has admitted to violating the terms of probation.'" (citation omitted)); United States v. Pelensky, 129 F.3d 63, 68 (2d Cir. 1997) (declining to adopt a colloquy requirement as a matter of federal law). Following the majority of courts, we decline to adopt a formal,

full colloquy requirement. Although trial courts have discretion to decide how best to ensure that a defendant's rights are adequately protected,[9] the trial courts must ensure that the record demonstrates that the court "canvas[es] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences," including, most importantly, the defendant's knowledge of the maximum sentence that he may face when stipulating to a probation violation. Settles, 561 S.E.2d at 109 (citation, quotation marks, and brackets omitted).

Because the record before us does not reflect that Sandoval's stipulation was knowing, intelligent, and voluntary, vacatur is the appropriate remedy. The exchange between the parties and the court does not reflect that Sandoval knew he was agreeing that he had violated his probation by being convicted of a crime; rather, Sandoval addressed other, more minor probation violations when addressed by the court, which might not sufficiently justify revoking probation. See State v.

_____

[9]    We note that, in the interest of sound judicial administration, an on-the-record colloquy is an effective way to ensure that a defendant's rights are adequately protected. However, we find the Michigan Court of Appeals' reasoning in declining to adopt a formal, full colloquy requirement persuasive. Hardin, 245 N.W.2d at 568-69 ("In holding today that a defendant who desires to admit a probation violation must first be informed, on the record, of his right to have a hearing, it is not our intent to lock the trial judge into any 'checklist' type of situation.")).

Nakamura, 59 Haw. 378, 380, 581 P.2d 759, 762 (1978) ("The court may revoke a defendant's probation only where it is satisfied 'that the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of [probation.]'" (emphasis added)).[10]

Nor does the record confirm that Sandoval was informed of the potential penalty at the time he purportedly stipulated to his violations. See Wong, 52 Haw. at 425, 477 P.2d at 634 ("[A waiver of one's trial rights via entry of a guilty plea] is not constitutionally acceptable unless made voluntarily and with full understanding of the consequences."). Most notably, it does not appear that Sandoval was aware that he could be sentenced consecutively on all counts.

Accordingly, we cannot conclude that Sandoval stipulated to the probation violations knowingly, intelligently, and voluntarily, and thus, the stipulation must be vacated.

---

[10] The Nakamura court quoted a now-repealed statute governing probation revocation, but the current scheme requires the same. HRS § 706-625(c) (2014) provides:

> The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or has been convicted of a felony. The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.

**C.    The Circuit Court Did Not Sufficiently Justify its Imposition of Consecutive Sentences**

Pursuant to HRS § 706-668.5,[11] a sentencing court may use its discretion to order that a person convicted of more than one offense serve terms of imprisonment concurrently or consecutively.  That statute requires that the sentencing court consider the factors set forth in HRS § 706-606 to make this determination.[12]

We held in State v. Barrios, 139 Hawaiʻi 321, 389 P.3d 916 (2016), that when imposing multiple consecutive sentences, the circuit court must "explain its rationale for each consecutive sentence in order to inform the defendant and appellate courts of the specific factors underlying each sentence."  Id. at 337, 389 P.3d at 932 (emphasis added).  We further explained, "While the same factors could be sufficiently aggravated to justify imposing more than one consecutive

_____

[11]    HRS § 706-668.5 states in relevant part:

(1) If multiple terms of imprisonment are imposed on a defendant, whether at the same time or at different times, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively.  Multiple terms of imprisonment run concurrently unless the court orders or the statute mandates that the terms run consecutively.

(2) The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706-606.

[12]    For the factors set forth in HRS § 706-606, see supra, note 5.

sentence, the sentencing court should specify that basis or identify another basis for determining how many consecutive sentences to impose." Id. Indeed, the instant case illustrates why our law requires a rationale for each and every consecutive sentence: thirteen consecutive sentences on each of Sandoval's convictions for violation of an injunction exposed him to a term of imprisonment thirteen times the maximum sentence that could have been imposed for each individually. Such "a large disparity between the maximum statutory sentence for each offense and the aggregate consecutive sentence imposed by the court" requires that the court provide "a clearly articulated rationale." Id. at 338, 389 P.3d at 933.

The rationale on the record here is not sufficient to meet that standard. At sentencing, the State specified the facts relevant to each subsection of § 706-606; the circuit court indicated that it agreed with the State's analysis. The circuit court also stated that it was concerned about Sandoval's repeated violation of the TRO, and that his statements about CW1 suggested he would continue to violate the TRO. Additionally, the circuit court noted Sandoval's apparent lack of self-reflection into his personal issues and lack of respect for CW1's wishes. But while this may suffice to justify the imposition of a consecutive sentence, it is not sufficient to justify consecutive sentences for each of Sandoval's thirteen

33

convictions.  The record does not sufficiently reflect that the sentencing court considered whether each of those consecutive sentences was necessary to further the ends of HRS § 706-606.  Accordingly, the circuit court's observations did not explain the reasoning behind imposing all of Sandoval's sentences to run consecutively, as Barrios requires.

Based on this record, the circuit court erred in imposing consecutive sentences because it failed to specify why it imposed each of the thirteen sentences consecutively.[13]

## D.   There was Substantial Evidence to Support Sandoval's Conviction for Second-Degree Assault

Taking the evidence adduced in the light most favorable to the State, substantial evidence supports Sandoval's conviction for second-degree assault.  In his testimony, Sandoval maintained that he was acting in self-defense because he thought that CW2 was about to punch him.  Self-defense to a criminal charge contains both a subjective and an objective prong: the defendant must believe that force is necessary, and that belief must be reasonable.  State v. Augustin, 101 Hawai'i 127, 128, 63 P.3d 1097, 1098 (2002) (citing HRS §§ 703-304, 703-305).

---

[13]    In light of our disposition on this issue, we need not consider whether the sentencing court improperly relied upon Sandoval's alleged unwillingness to admit guilt.

The question is therefore whether the State presented substantial evidence to disprove that Sandoval acted in self-defense. Upon review of the record, we conclude that it did. Both CW2 and Sandoval testified that Sandoval threw the first punch during the 10:00 p.m. incident, which was confirmed by another witness at the scene. Sandoval also testified that he voluntarily returned to the restaurant around 10:00 p.m., calling into doubt his testimony that he was afraid CW2 would attack him. Two bystanders testified that they saw a knife in Sandoval's hand during the fight with CW2. And the photos of CW2's face show deep cuts. Thus, taking the evidence adduced in the light most favorable to the State, substantial evidence supported Sandoval's conviction for second-degree assault.

## V.    CONCLUSION

For the foregoing reasons, we vacate the ICA's December 20, 2019 judgment on appeal and the circuit court's July 17, 2018 orders of resentencing and revocation of probation in 1PC-14-1-001782 and 1PC-15-1-001156. We otherwise affirm the circuit court's May 18, 2015 and March 21, 2016 acceptance of Sandoval's no contest pleas in 1PC-14-1-001782 and 1PC-15-1-001156, and the circuit court's July 17, 2018 judgment of conviction for second-degree assault and violation of an injunction against harassment in 1PC-16-1-0563. We thus remand

35

the case to the circuit court for further proceedings consistent

with this opinion.

Walter J. Rodby                    /s/ Mark E. Recktenwald
for petitioner
                                   /s/ Paula A. Nakayama
Chad M. Kumagai
for respondent                     /s/ Sabrina S. McKenna

                                   /s/ Michael D. Wilson

                                   /s/ Bert I. Ayabe

