**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000296
15-AUG-2024
08:01 AM
Dkt. 96 SO**

CAAP-23-0000296

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
MARLIN L. LAVOIE, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-22-0000737(2))

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Nakasone and Guidry, JJ.)

Defendant-Appellant Marlin L. Lavoie (**Lavoie**) appeals from the March 7, 2023 Judgment; Conviction and Sentence; Notice of Entry (**Judgment**) entered by the Circuit Court of the Second Circuit (**Circuit Court**).[1] Under a plea agreement with Plaintiff-Appellee State of Hawai'i (**State**), Lavoie pleaded guilty to Count One - Manslaughter, in violation of Hawaii Revised Statutes (**HRS**) § 707-702(2) (2014);[2] Count Two - Carrying or Use of Firearm in

---

[1] The Honorable Peter T. Cahill presided.

[2] HRS § 707-702 provided, at the time of the offense:

> **§ 707-702 Manslaughter.** (1) A person commits the offense of manslaughter if:
>
> > (a) The person recklessly causes the death of
> > (continued...)

the Commission of a Separate Felony, in violation of HRS § 134-21(a) (2023);[3] and Count Three - Ownership or Possession

---

[2](...continued)

another person; or

(b)    The person intentionally causes another person to commit suicide.

(2)    In a prosecution for murder or attempted murder in the first and second degrees it is an affirmative defense, which reduces the offense to manslaughter or attempted manslaughter, that the defendant was, at the time the defendant caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.  The reasonableness of the explanation shall be determined from the viewpoint of a reasonable person in the circumstances as the defendant believed them to be.

(3)    Manslaughter is a class A felony.

[3]    HRS § 134-21 provides:

**§ 134-21    Carrying or use of firearm in the commission of a separate felony; penalty.** (a)  It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection when the separate felony is:

(1)    A felony offense otherwise defined by this chapter;

(2)    The felony offense of reckless endangering in the first degree under section 707-713;

(3)    The felony offense of terroristic threatening in the first degree under section 707-716(1)(a), 707-716(1)(b), or [707-716(1)(e)]; or

(4)    The felony offenses of criminal property damage in the first degree under section 708-820 or criminal property damage in the second degree under section 708-821 and the firearm is the instrument or means by which the property damage is caused.

(b)    A conviction and sentence under this section shall be in addition to and not in lieu of any conviction and sentence for the separate felony; provided that the sentence imposed under this section may run concurrently or consecutively with the sentence for the separate felony.

(continued...)

Prohibited of Any Firearm or Firearm Ammunition (**Felon-in-Possession**), in violation of HRS § 134-7(b), (h) (2011).[4] The Circuit Court convicted Lavoie and sentenced him to 20 years imprisonment in Counts One and Two to run consecutive to each other and 10 years in Count Three to run concurrently with Counts One and Two, with credit for time served, and ordered Lavoie to pay restitution and fees.

Lavoie raises two points of error on appeal, contending that the Circuit Court erred by: (1) in a separate proceeding that was dismissed without prejudice for charging defects (2PC131000236), only granting partial funding for Lavoie to retain an expert psychologist to provide a dangerousness assessment at sentencing; and (2) in the Circuit Court case underlying this appeal (in which Lavoie was re-charged by grand jury indictment (2CPC-22-0000737)), imposing a consecutive

---

[3](...continued)
    (c)   Any person violating this section shall be guilty of a class A felony.

[4]    HRS § 134-7(b)(1), (h) provided at the time of the offense:

    **§ 134-7  Ownership or possession prohibited, when; penalty.**

        . . . .

        (b)  No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

        . . . .

        (h)  Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony.  Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor.

sentence without sufficient supporting rationale, which did not adequately consider Lavoie's mental health issues, and which was disproportionate to sentences in other cases.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Lavoie's points of error as follows:

(1) Lavoie argues that because "the parties had agreed that there was a factual record of an extreme mental or emotional disturbance surrounding Lavoie's actions to permit a change of plea [to] manslaughter[,]" and given that Lavoie "had been incarcerated for 9 years," his "mental or emotional disturbance is highly relevant to dangerousness," along with consecutive sentencing and "his ability at rehabilitation." Lavoie further contends that the Circuit Court's prior ruling "limit[ing] requested funds to $1000.00" was "law of the case," and "Lavoie was unable to have needed assistance for his mitigating factors and sentencing."

The State makes several arguments in response, most notably that after Lavoie was recharged in 2CPC-22-0000737, he did not renew his request for funds to engage Dr. Acklin to provide further expert assistance in conjunction with sentencing in this case.

"As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil

4

cases." State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003); Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

"A criminal case is formally initiated by an indictment, complaint, or oral charge. *See* Hawaiʻi Rules of Penal Procedure [(**HRCP)]** Rule 7(a). When the indictment, complaint, or oral charge is dismissed, proceedings in the trial court are terminated." State v. Kalani, 87 Hawaiʻi 260, 262, 953 P.2d 1358, 1360 (1998). "If the dismissal is without prejudice, the prosecution is permitted to recharge the defendant later. However, even if the prosecution is allowed to recharge the defendant, recharging him/her does not revive the original case. Rather, recharging the defendant initiates a *new* case." Id. (citation omitted); see also State v. Michaeledes, 152 Hawaiʻi 217, 222, 524 P.3d 1241, 1246 (2023) ("The second charging document alleging the same three counts initiated a second case, separate from the first case arising from the first charging document.").

HRPP "Rule 12(g) creates a limited exception to the procedure that a dismissal completely terminates the original case." Deangelo v. Souza, 152 Hawaiʻi 55, 59, 520 P.3d 253, 257 (2022). "If the court grants a dismissal based on 'a defect in the institution of the prosecution or in the charge,' the rule allows the judge to hold the defendant in custody (or continue bail) while the State re-charges." Id. "In effect, dismissal paired with a 12(g) grant resets the proceedings to where they

were before the defective charge or indictment was made. In [defendant's] case, that means after a preliminary hearing at which the court found probable cause." Id.

In this case, Lavoie waived any argument on appeal for funds to retain an expert psychologist for his sentencing. Lavoie's Motion for Costs was filed in 2PC131000236; any alleged error in the oral ruling on the Motion for Costs occurred in that proceeding, which was dismissed without prejudice. No party filed an appeal from 2PC131000236.

Lavoie's motion to dismiss 2PC131000236 argued that under State v. Obrero, 151 Hawaiʻi 472, 517, P.3d 755 (2022), Lavoie was incorrectly charged by complaint versus grand-jury indictment. The Circuit Court dismissed 2PC131000236 without prejudice, and ordered that Lavoie be held in custody without bail under HRPP Rule 12(g). Lavoie was indicted on October 17, 2022, in 2CPC-22-0000737 -- the case underlying this appeal – but this did "not revive the original case" insofar as "recharging the defendant initiates a *new* case." See Kalani, 87 Hawaiʻi at 262, 953 P.2d at 1360.

Thereafter, Lavoie did not file a request for funds to retain Dr. Acklin or another expert to conduct a dangerousness assessment for his sentencing. The plea agreement stated that the parties requested that the August 4, 2022 Presentence Report, which was originally prepared in the dismissed proceeding (2PC131000236), be adopted in this case. At the time of his guilty plea on February 23, 2023, Lavoie and his counsel had

approximately six months to review the August 4, 2022 Presentence Report. The August 4, 2022 Presentence Report included the written reports of the three-panel fitness examiners in Lavoie's 2015 trial (Dr. George C. Choi, Dr. Martin Blinder, and Dr. Tom Cunningham), along with the defense's 2015 expert reports of Drs. Acklin and Kohn that Lavoie's counsel submitted to the probation officers.[5] Prior to the sentencing hearing on March 7, 2023, Lavoie did not seek to "controvert or supplement" the contents of the August 4, 2022 Presentence Report under HRS § 706-604(2) (2014).[6]

In the absence of a request for further funds to engage an expert in conjunction with sentencing in 2CPC-22-0000737, and based on the entirety of the record before us, we conclude that Lavoie's argument that relief should be granted in this case because the Circuit Court erred in limiting the funding for further expert engagement in 2PC131000236 is without merit.

_____

[5] Drs. Kohn, Acklin, and Blinder testified for the defense at Lavoie's 2015 trial. State v. Lavoie, 145 Hawaiʻi 409, 416-18, 453 P.3d 229, 236-38.

[6] HRS § 706-604(2) provides:

> **§ Opportunity to be heard with respect to sentence; notice of pre-sentence report; opportunity to controvert or or supplement; transmission of report to department.**
>
> . . . .
>
> (2) The Court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them. The court shall amend or order the amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made.

(2)    Lavoie argues that the Circuit Court abused its discretion in sentencing him because it failed to provide a sufficient rationale for imposing a consecutive sentence, and it failed to avoid the sentencing disparities outlined and argued by defense counsel.

"Multiple terms of imprisonment run concurrently unless the court orders or the statute mandates that the terms run consecutively."  HRS § 706-668.5(1) (2014 & Supp. 2023). "Pursuant to HRS § 706-668.5, a sentencing court may use its discretion to order that a person convicted of more than one offense serve terms of imprisonment concurrently or consecutively.  That statute requires that the sentencing court consider the factors set forth in HRS § 706-606 to make this determination."  State v. Sandoval, 149 Hawaiʻi 221, 236, 487 P.3d 308, 323 (2021) (footnote omitted).

HRS § 706-606 (2014) states:

> **§ 706-606  Factors to be considered in imposing a sentence.**  The court, in determining the particular sentence to be imposed, shall consider:
>
> (1)    The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    The need for the sentence imposed:
>
> (a)    To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>
> (b)    To afford adequate deterrence to criminal conduct;
>
> (c)    To protect the public from further crimes of the defendant; and
>
> (d)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

8

(3)  The kinds of sentences available; and

(4)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

"Discretionary use of consecutive sentences is properly imposed in order to deter future criminal behavior of the defendant, to insure public safety, and to assure just punishment for the crimes committed."  State v. Tauiliili, 96 Hawaiʻi 195, 199, 29 P.3d 914, 918 (2001).

"[A] court must state its reasons as to why a consecutive sentence rather than a concurrent one was required."  State v. Hussein, 122 Hawaiʻi 495, 509, 229 P.3d 313, 327 (2010).  "[T]he sentencing court is not required to articulate and explain its conclusions with respect to every factor listed in HRS § 706-606."  State v. Kong, 131 Hawaiʻi 94, 102, 315 P.3d 720, 728 (2013).  "[T]he sentencing court is required to articulate its reasoning only with respect to those factors it relies on in imposing consecutive sentences."  Id.

> Such a requirement serves dual purposes.  First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate.  An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public.
>
> Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors.  It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term.  Hence, reasons confirm for the defendant, the victim, the public, and the appellate court,

> that the decision to impose consecutive sentences was
> deliberate, rational, and fair.

Hussein, 122 Hawaiʻi at 509-10, 229 P.3d at 327-28.

"The 'nature and circumstances' of same event, same victim cases are different from multiple event cases with multiple victims.  Stacking sentences after merely reciting a case's circumstances is an abuse of discretion."  State v. Bautista, 153 Hawaiʻi 284, 291, 535 P.3d 1029, 1036 (2023) (citations omitted).  "Courts must give substantial and pointed reasons to justify a consecutive sentence.  Reciting sentencing factors and offense circumstances may sometimes work for a concurrent sentencing disposition.  However, it does not justify running a sentence consecutively."  Id.

"[A] clearly articulated rationale is necessary when there is a large disparity between the maximum statutory sentence for each offense and the aggregate consecutive sentence imposed by the court."  State v. Barrios, 139 Hawaiʻi 321, 338, 389 P.3d 916, 933 (2016).  "The sentencing court must adequately distinguish between the need for consecutive sentences and the sentence a defendant 'would have received under the presumption of concurrent sentencing.'"  Bautista, 153 Hawaiʻi at 290, 535 P.3d at 1035 (quoting Lewi v. State, 145 Hawaiʻi 333, 350, 452 P.3d 330, 347 (2019).

Here, the Circuit Court imposed a single consecutive sentence, running Lavoie's term for Count Two consecutive to his term to Count One, while running the term for Count Three concurrently.  We note that HRS § 134-21(b) (2011), part of the

10

statute at issue in Count Two, specifically provides that a conviction and sentence for "[c]arrying or use of firearm in the commission of a separate felony" "shall be in addition to and not in lieu of any conviction and sentence for the separate felony" and the sentence imposed "may run concurrently or consecutively with the sentence for the separate felony."

At sentencing, the Circuit Court noted that it had read all of the transcripts and expert reports that had been filed in the prior case, and acknowledged Lavoie's mental health issues. The Circuit Court nevertheless expressed doubts about whether experts could predict future behavior and suggested that "[s]ometimes the best indicator of future conduct is past conduct[,]" noting that Lavoie had a prior felony conviction, he took a rifle that he wasn't supposed to have, and "he blew her away."

The Circuit Court explained its consideration of the HRS § 706-606 sentencing factors noting, *inter alia*, that: (1) the circumstances of the offense were "quite dramatic," *i.e.*, that Lavoie shot and killed the mother of his four children at close range while she was sitting on a small porch with multiple other people nearby including a child sitting on her mother's lap; ten years after the shooting, two of the people who were on that porch gave statements at sentencing about the number of people, (including children), that were still traumatized by the event; (2) Lavoie had a prior "history" of being a "convicted felon having entered into somebody's house or dwelling or

whatever it was and there was a violent crime;" (3) the "seriousness of the offense" and the need to "promote respect for the law and provide just punishment" in that "[w]e have a dead person" and "a firearm that the defendant was prohibited legally from having in his possession or control was used to commit that offense[;]" (4) "a long sentence of imprisonment will certainly deter this defendant from criminal conduct" and "protect the public from further crimes of the defendant" because Lavoie "posed a danger in the past and based upon what I have here, I'm concerned that he can pose a danger in the future" and the "impulsiveness that Mr. Lavoie exhibited in committing this crime and taking -- getting the gun out of the car and then going over and blowing Malia [Kahalewai] (**Malia**) away. "It's that impulsiveness that causes me concern that it can happen again[;]" and (5) the certainty that Lavoie "will receive vocational and other medical care and treatment including mental health care."

The Circuit Court explained why this is a "different circumstance" "where a sentencing disparity from other similar cases are warranted" because the "victim is the spouse[,]" Lavoie "was a convicted felon" who "used a firearm which is a separate crime[,]" he "had an opportunity to avoid doing what he did[,]" another person holding a child was sitting next to Malia at the time of the shooting, and "[t]his is a crime that took your children's mother away and took your children's father away at the same time." The Circuit Court expressed concern over the impulsiveness demonstrated by Lavoie when he went to the car, got

the gun, and then went back and shot Malia in the chest; specifically noting that it could happen again, and it was unpredictable.  The Circuit Court noted the detail provided by defense counsel regarding sentences in other cases that might be considered sentencing disparities, but explained that the legislative charge was to avoid *unwarranted* sentencing disparities and that this case warranted the consecutive sentence.

On this record, the Circuit Court's stated reasons set forth a "meaningful rationale" and "the specific circumstances that led the court to impose sentences consecutively in a particular case," which "confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair."  See Hussein, 122 Hawaiʻi at 509–10, 229 P.3d at 327–28.

For these reasons, the Circuit Court's March 7, 2023 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, August 15, 2024.

On the briefs:                          /s/ Katherine G. Leonard
                                        Acting Chief Judge
Matthew S. Kohm,
for Defendant-Appellant.                /s/ Karen T. Nakasone
                                        Associate Judge
Chad Kumagai,
Deputy Prosecuting Attorney,            /s/ Kimberly T. Guidry
County of Maui,                         Associate Judge
for Plaintiff-Appellee.